United States Court of Appeals

For the Eighth Circuit

_____

No. 14-3365

_____

BLB Aviation South Carolina, LLC

*Plaintiff - Appellant*

v.

Jet Linx Aviation, LLC; Jet Linx Aviation Corporation; Jet Linx Management
Company, LLC; Jamie Walker

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 22, 2015
Filed: December 14, 2015

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

BLB Aviation South Carolina, LLC ("BLB") sued Jet Linx Aviation
Corporation; Jet Linx Aviation, LLC; Jet Linx Management Company, LLC

(collectively, "Jet Linx"[1]); and Jamie Walker for damages arising from breach of contract. Jet Linx counterclaimed. After a bench trial, the district court awarded damages to both parties, and both parties appealed. We affirmed in part, but we reversed and remanded for the district court to analyze whether the cost-of-repair damages BLB sought would entail unreasonable economic waste before choosing between the cost-of-repair and diminution-in-value measures of damages. On remand, the district court[2] found BLB's damages too speculative under either measure of damages, thereby precluding recovery. We affirm.

I.

The facts underlying this case are set forth more extensively in our previous opinion. *BLB Aviation South Carolina, LLC v. Jet Linx Aviation, LLC*, 748 F.3d 829, 841 (8th Cir. 2014) [hereinafter "BLB I"]. We recite only the facts relevant to the current appeal.

BLB is an aviation company that owns airplanes, some of which are leased for charter flights. BLB is owned by Barry L. Bellue, Sr. and his son Barry L. Bellue, Jr. ("Lee Bellue"). Jet Linx operates an aircraft charter business. Jamie Walker was an employee of Jet Linx.

The parties' relationship began when Walker inquired about the possibility of leasing one or more BLB airplanes for Jet Linx's charter services. Shortly thereafter,

---

[1]Jet Linx Aviation Corporation has since merged into Jet Linx Aviation LLC and no longer exists as a separate entity; however, we adopt the parties' convention in not distinguishing among Jet Linx entities for the purposes of which entity or entities were parties to the contracts at issue here.

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Lee Bellue and Walker discussed the possibility of BLB purchasing an airplane and leasing it to Jet Linx. BLB and Jet Linx then entered into a dry-lease agreement for one aircraft, which had the registration number N400GK. The lease agreement made Jet Linx responsible for maintenance of N400GK. Jet Linx further agreed that "[a]ll inspections, repairs, modifications, maintenance, and overhaul work . . . will be performed in accordance with the standards set by the Federal Aviation Regulations" and agreed to "maintain log books and records . . . in accordance with the Federal Aviation Regulations." The lease agreement required BLB to pay for the maintenance performed by Jet Linx on N400GK.

BLB and Jet Linx also negotiated a management-services agreement for Jet Linx to charter another of BLB's airplanes, registered as N789DJ. Pursuant to this services agreement, BLB agreed to reimburse Jet Linx for certain expenses for N789DJ. As with the N400GK lease agreement, Jet Linx agreed to "ensure that all maintenance and repair work on N789DJ was performed in accordance with the standards set out in the Federal Aviation Regulations and to ensure that all such maintenance work was accurately recorded in accordance with the Federal Aviation Regulations."

Following a maintenance incident that resulted in disputed repair costs, the parties' relationship deteriorated. Barry Bellue requested that N789DJ be returned to BLB, and Jet Linx informed BLB that it would not renew the N400GK lease agreement under its existing terms.

BLB brought this action for damages against Jet Linx and Walker alleging breach of contract; Jet Linx then counterclaimed against BLB.[3] After a bench trial, the district court concluded that Jet Linx had breached the N400GK dry-lease agreement and the N789DJ management-services agreement by failing to keep proper

_____

[3]Before trial, the N400GK was sold "as is" for $425,000.

records and parts tags for maintenance performed by Jet Linx on the airplanes. However, the court declined to award damages because it found that BLB had failed to prove them with sufficient certainty. Jet Linx appealed, and BLB cross-appealed.

In *BLB I*, we affirmed the district court on four issues, but we reversed and remanded for further analysis on the appropriate measure of damages to award to BLB for Jet Linx's breach. Specifically, we disagreed with the district court for having "concluded that the diminution in the value of the airplanes is the proper measure of BLB's damages without undertaking any . . . analysis" regarding whether the cost-of-repair measure of damages would entail unreasonable economic waste. *BLB I*, 748 F.3d at 841. "Absent such a finding," we wrote, "it was error for the district court to choose diminution in value as the appropriate measure of BLB's damages." *Id.* (citation omitted).

On remand, after analyzing BLB's damages under both the cost-of-repair and diminution-in-value measures, the district court again found that BLB failed to prove damages with sufficient certainty. BLB again appeals. For the reasons set forth below, we affirm.

II.

Because both parties cite Nebraska law for the standard of review, we apply Nebraska law "in accordance with the practice of our prior opinions that considered an appeal following a bench trial in a diversity action."[4] *BLB I*, 748 F.3d at 835. Accordingly, in this appeal from a bench trial, "the trial court's factual findings have

---

[4]We again note that, in other cases, our court has concluded that the standard of review is a procedural issue that is governed by federal law. *Kramer v. Cash Link Sys.*, 715 F.3d 1082, 1086 (8th Cir. 2013); *see Newberry v. Burlington Basket Co.*, 622 F.3d 979, 983 (8th Cir. 2010). As before, we discern no difference between the federal and state standards of review as applied here.

the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong." *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 739 (Neb. 2011). "[W]e independently review questions of law decided by a [district] court," *id.*, noting that, in a contracts case, "[w]hile the amount of damages presents a question of fact, the proper measure of damages presents a question of law." *Connelly v. City of Omaha*, 816 N.W.2d 742, 753 (Neb. 2012).

This case presents two issues. First, we must address BLB's contention that cost of repair represents the correct measure of damages because Jet Linx failed to carry its burden to show economic waste would result. Second, we must determine whether the district court erred in finding that BLB did not prove its damages with sufficient certainty. We address each issue in turn.

A.

On appeal, BLB first argues that the district court erred by finding that BLB was not entitled to damages measured by the cost of repair, namely, the $171,363.37 that BLB's expert testified represents the cost to rectify the lack of maintenance records and part tags by redoing the underlying maintenance work. BLB's expert, Keith Flinn, arrived at that figure by summing the amounts Jet Linx had previously billed BLB for maintenance work on both airplanes for which documentation and parts tags subsequently were determined to be missing. Although Jet Linx failed to provide a complete set of maintenance records and parts tags when it returned the airplanes, the parties do not dispute that Jet Linx provided the underlying maintenance.

The appropriate choice between the available measures of damages "depends upon the evidence in the particular case." *Fink v. Denbeck*, 293 N.W.2d 398, 401-02 (Neb. 1980). If a defect in the performance of a contract can be remedied, the ordinary measure of damages is the cost of repair. *Id.* at 402. As we noted in *BLB*

*I*, "the plaintiff is entitled to damages measured by the cost of repair 'unless [the defendant] proves affirmatively and convincingly that such construction and completion would involve an unreasonable economic waste.'" 748 F.3d at 841 (quoting *Moss v. Speck*, 306 N.W.2d 156, 158 (Neb. 1981) (quoting 5 A. Corbin, Contracts § 488 (1964))). Diminution-in-value damages provide the alternative measure, consisting of the "difference in value between the thing as represented and its actual value." *Fink*, 293 N.W.2d. at 402.[5] Thus, cost of repair supplies the default measure unless the breaching party shows that economic waste would result.

Economic waste occurs where "the cost of completion as required by the contract greatly outweighs the benefit to the owner to do so." 13 Am. Jur. 2d Building, Etc. Contracts § 82; *see also A-1 Track & Tennis, Inc. v. Asphalt Maint., Inc.*, No. A-99-433, 2000 WL 781371, at *5 (Neb. Ct. App. June 20, 2000) (describing economic waste as arising "where the cost of correction would be grossly out of proportion to the value which the correction would add to the property involved"). BLB insists that cost of repair is the proper measure of damages and that repairing the damage of missing maintenance records and parts tags necessitates completely redoing the underlying maintenance work. However, the notion of replacing undisputedly good parts with new parts for the sake of obtaining complete

---

[5] Although this rule has been applied most often in the context of construction contracts, the Nebraska Supreme Court has applied it more broadly, including to a contract for repair. *See Lis v. Moser Well Drilling & Serv., Inc.*, 377 N.W.2d 98, 99-100 (Neb. 1985) (explaining that this rule applies to an "improvement" where the defendant failed to solve a well overflow problem); *see also A R L Corp. v. Hroch*, 268 N.W.2d 101, 103-04 (Neb. 1978) (applying rule where defendant failed to prepare property for paving); 24 Williston on Contracts § 66:17 (4th ed. 2013) (noting that the principles underlying the choice between cost-of-repair damages and diminution-in-value damages "are generally applicable to all kinds of contracts for a particular piece of work"). Although the dry-lease and management-services agreements are leases for the use of BLB's airplanes, the contractual provisions at issue here require Jet Linx to maintain and repair BLB's airplanes.

maintenance records exemplifies unreasonable economic waste. Undertaking such repairs would be grossly disproportional to the value a new set of records and parts tags would add to the airplanes, particularly when, as Jet Linx shows here, several cheaper alternatives are available. Jet Linx's expert, Allen E. King, testified that remedying Jet Linx's breach did not necessitate redoing the underlying repairs, explaining alternative methods of compliance with Federal Aviation Regulation maintenance action record requirements beyond keeping a particular type of logbook or parts tags. Other methods of verifying a given airplane part include examining a type certificate data sheet, looking at an illustrative parts catalog, reviewing the aircraft equipment list that comes with the airplane, or physically inspecting the part and verifying it with the manufacturer. Even BLB's expert, Flinn, acknowledged the availability of other, more reasonable alternatives to remedy Jet Linx's breach. Flinn testified that, in order to remedy incomplete maintenance records and parts tags, "you'd have to go back and look and *either* redo that maintenance task that you don't have a record for, *or* if you don't have a parts tag for[,] you'd have to take the part and get it recertified or something like that to make sure you have airworthy components on the airplane." Flinn, echoing King, admitted that another mode of certifying maintenance involved physically inspecting aircraft parts for make and model to compare the data to the type certificate data sheet or catalog. The availability of these alternatives renders BLB's version of cost-of-repair damages economically wasteful. Because courts must avoid unreasonable economic waste in awarding damages, the district court properly refused to award the cost-of-repair damages BLB posited.

Jet Linx also contends that BLB's formulation of cost-of-repair damages would result in windfall to BLB, further undercutting the presumption that the cost of repair provides the correct remedy. "In a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position he or she would have occupied if the contract had been performed, that is, to make the injured party whole." *Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 450 (Neb. 1993). In light of this

objective, a court will award cost-of-repair damages only when such an amount "provide[s] a reasonably accurate measure of damages . . . and do[es] not result in a windfall." *Id.* at 451. Indeed, the Restatement explicitly links windfall with economic waste:

> Damages based on the cost to remedy the defects would then give the injured party a recovery greatly in excess of the loss in value to him and result in a substantial windfall. Such an award will not be made. It is sometimes said that the award would involve "economic waste," but this is a misleading expression since an injured party will not, even if awarded an excessive amount of damages, usually pay to have the defects remedied if to do so will cost him more than the resulting increase in value to him.

Restatement (Second) of Contracts § 348 cmt. c (Am. Law Inst. 1981). Had Jet Linx properly recorded the maintenance and kept the parts tags as stipulated in the dry-lease and management-services agreements, Jet Linx would not have returned the airplanes to BLB in a different condition—only the logbook and the parts tags would have differed. Further, BLB likely would not apply the cost-of-repair damages amount it seeks toward actually redoing the maintenance work underlying the missing records and parts tags. BLB no longer owns N400GK, and, in any event, BLB does not dispute that Jet Linx provided the underlying maintenance and parts. Accordingly, cost-of-repair damages as argued by BLB would result in windfall and, therefore, in economic waste, a result the district court properly avoided. Diminution in value thus provides the appropriate measure of damages.

B.

Having established diminution in value as the proper measure of damages here, we must next determine whether BLB proved its damages with sufficient certainty. The district court correctly noted that neither party presented non-speculative evidence of any diminution in value for either aircraft; however, critical to this

appeal, the burden of proving the amount of damages with sufficient certainty fell to BLB. The Nebraska Supreme Court "consistently [has] framed the question whether the evidence of damages is 'reasonably certain' as a question of law." *Pribil v. Koinzan*, 665 N.W.2d 567, 572-73 (Neb. 2003); *see Shipler v Gen. Motors Corp.*, 710 N.W.2d 807, 839 (Neb. 2006). The plaintiff bears the burden of proving its damages with sufficient specificity. *LeRoy Weyant & Sons, Inc. v. Harvey*, 321 N.W.2d 429, 431 (Neb. 1982). Although evidence may fall short of "mathematical certainty," a plaintiff may not rely on "evidence which is speculative and conjectural." *Sack Bros. v. Great Plains Co-op., Inc.*, 616 N.W.2d 796, 809 (Neb. 2000).

In light of the alternative methods available to BLB to remedy the breach, BLB's exclusive reliance on the cost to redo the maintenance completely, measured by the cost BLB previously paid for that maintenance, proves fatal. Rather than establish how the lack of documentation and tags actually diminished the planes' values and by how much, BLB's evidence failed to move beyond conjecture that Jet Linx's breach "could" have negatively affected the airplanes' value. The only valuation figure at the district court's disposal was that N400GK was sold "as is" before trial for $425,000; however, no pre-buy inspection was performed, and BLB did not provide any evidence as to how much the plane would have been worth with proper documentation and tags. BLB likewise failed to present evidence to facilitate a comparison of N789DJ's value with and without proper documentation. As the district court noted, "[t]he information provided by the parties render[ed] it impossible for the court to determine diminution in value for either aircraft." Because BLB did not offer evidence of the reduced value of either airplane resulting from Jet Linx's failure to provide a complete set of maintenance records and parts tags, the district court did not err in finding that BLB failed to prove its damages with sufficient certainty.

III.

For the reasons set forth above, we affirm the district court's judgment for Jet Linx on BLB's claim for damages.

_____